IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARK ANTHONY SEINA, FED. | ) | CIV. NO. 16-00051 LEK/BMK |
| REG. #13272-097, | ) | |
| | ) | ORDER DISMISSING COMPLAINT |
| Plaintiff, | ) | IN PART |
| | ) | |
| vs. | ) | |
| | ) | |
| FEDERAL DETENTION CENTER | ) | |
| HONOLULU, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT IN PART

Before the court is pro se Plaintiff Mark Anthony
Seina's prisoner civil rights Complaint brought
pursuant to *Bivens v. Six Unknown Federal Narcotics
Agents*, 403 U.S. 388 (1971); the Federal Tort Claims
Act ("FTCA"); the Americans With Disabilities Act
("ADA"), 42 U.S.C. § 12182 *et seq.*; and the Religious
Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb,
*et seq*. Doc. No. 1. Plaintiff is incarcerated at the
Federal Detention Center-Honolulu ("FDC-Honolulu"). He
names as Defendants the Department of Justice ("DOJ"),
the Federal Bureau of Prisons ("BOP"), FDC-Honolulu,
FDC-Honolulu Health Center Services, and staff members

Director S. Blackmon, Dr. Simon, Physician's Assistant
("PA") D. Smith, E. Dayton, RN.  He also names John and
Jane Doe and ABC Company.

The court has screened the Complaint pursuant to 28
U.S.C. §§ 1915(e)(2) and 1915A(b)(1), and finds that it
states a cognizable claim for relief in part.
Plaintiff's *Bivens* claims as alleged under the Eighth
Amendment against Defendants S. Blackmon, Dr. Simon,
D. Smith, and E. Dayton in their individual capacities
only, state a claim and shall proceed.

Plaintiff's claims under the FTCA, ADA, RFRA, and
the First and Fifth Amendments, and all claims in
Counts II, III, IV, and V are DISMISSED with leave to
amend as limited below.

## I.  STATUTORY SCREENING

The court must screen all civil actions brought by
prisoners challenging prison conditions or seeking
redress from a government entity, officer, or employee.
28 U.S.C. § 1915A(a).  Complaints or claims that are
frivolous, malicious, fail to state a claim, or seek
relief from a defendant who is immune from such relief

2

must be dismissed.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint fails to state a claim if it (1) lacks a cognizable legal theory, or (2) contains insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A sufficient complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

3

for the misconduct alleged." *Iqbal*, 556 U.S. at 678.
"Determining whether a complaint states a plausible
claim for relief [is] . . . a context-specific task
that requires . . . judicial experience and common
sense." *Id.* at 679. "[W]here the well-pleaded facts do
not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged —
but it has not 'show[n]' — 'that the pleader is
entitled to relief.'" *Id.* (quoting Fed. R. Civ. P.
8(a)(2)).

The court construes pro se complaints liberally, in
the light most favorable to the plaintiff, and accepts
all allegations of material fact as true. *See Erickson
v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*); *Hebbe
v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010). A *pro
se* prisoner's complaint is "held to less stringent
standards than formal pleadings drafted by lawyers."
*Erickson*, 551 U.S. at 94. Leave to amend should be
granted unless it appears that amendment is futile.
*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II. **BACKGROUND**

These facts are taken from the Complaint and accepted as true.  On October 17, 2015, Plaintiff entered FDC-HNL pursuant to a revocation of supervised release order.[1]  Defendant E. Dayton, RN, conducted a "pre-medical screening."  Compl., Doc. No. 1, PageID #8.  Plaintiff told Dayton he had just been released from the Pali Momi Medical Center Emergency Department with a diagnosis of "terminal" Pulmonary Arterial Hypertension ("PAH"), and that he had a follow-up appointment on November 12, 2015.  *Id.*  Plaintiff asked Dayton how to obtain his medication and was told to "notify medical at intake" in "about 2 weeks."  *Id.*

After intake, Plaintiff told Officer Gonzalez that he was feeling faint and having difficulty breathing. He was immediately taken to the Health Services Center

---

[1] The court takes judicial notice of Plaintiff's federal criminal proceedings in *United States v. Seina*, CR. No. 1:06-cr-00470 HG. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (allowing judicial notice of proceedings directly related to issues alleged in the complaint).  Supervised release was revoked on November 5, 2015; Plaintiff's scheduled release date is June 18, 2016.

and seen by Defendant D. Smith, PA.  Plaintiff informed
Smith of his symptoms and PAH and asked that his doctor
be notified.  Smith allegedly replied there was no
immediate medical emergency, but told Plaintiff to
inform medical staff about his condition during his
initial medical intake interview.  *Id.*, PageID #9.

On November 18, 2015, Defendant Dr. Simon reviewed
Plaintiff's medical records and requested an outside
specialist consultation.  It is unclear whether
Dr. Simon met or examined Plaintiff at this time.
Plaintiff says he tried to notify Dr. Simon of his
continuing shortness of breath, dizziness, and
faintness, but an unidentified "health service staff"
member told Plaintiff to be patient as an appointment
with a specialist was scheduled.  *Id.*

On December 16, 2015, Plaintiff saw Defendant
Dayton in the pill line and told her that he was
experiencing dizziness and shortness of breath.

On December 17, 2015, specialist Gehan Devendra,
MD, examined Plaintiff at The Queen's Medical Center
and prescribed him Tadaifill 10 mg.  *Id.*, PageID #11.

Plaintiff alleges that he did not receive this
medication for twelve days, during which time his
symptoms grew worse.  *Id.*, PageID #12.  Plaintiff
informed his family that he had not received his
prescription and they notified Dr. Devendra.

On December 27, 2015, Plaintiff asked Defendant
Dayton about his Tadaifill prescription.  Dayton
allegedly replied, "everyone is on vacation."  *Id.*,
PageID #8.  He told her his condition was worsening.

On December 29, 2015, Plaintiff received and began
taking Tadaifill.  *Id.*, PageID #12.

On December 30, 2015, apparently in response to
Plaintiff's family's concerns, Dr. Devendra wrote FDC-
Honolulu officials to notify them of Plaintiff's
"serious heart lung condition that requires the use of
medication chronically.  Failure [to] take medications
as directed will result in early worsening."  *Id.*,
PageID #16 (Dec. 30, 2016 Devendra letter).

Plaintiff says Dr. Devendra faxed another letter
with a *new* prescription to the FDC-Honolulu the next
day, December 31, 2015.  *Id.*, PageID #12.  Plaintiff

7

attaches a copy of this fax to his emergency motion,
which states: "Please contact Jill at 808-691-5236 with
update on prescription. Pt. needs medication asap."[2]
*See* Pl. Ex., Doc. No. 6-4, PageID #40.  Plaintiff says
he was never told of or given this new medication.

On or about December 31, 2016, approximately two
days after he began taking Tadaifill, Plaintiff began
experiencing dizziness, headaches, joint swelling, and
blurred vision.  *Id.*, PageID #11-12.  Plaintiff says he
notified "every Defendants: FDC Hon Health Service
about whats [sic] going on since taking medication,"
but was told to continue taking the Tadaifill.  *Id.*,
PageID #12.

On or about January 11, 2016, Plaintiff's Tadaifill
dosage was increased per Dr. Devendra's prior order.
*Id.* ("After 14 days Plaintiff's dosage is to
increase.").  Plaintiff voiced concerns about this

---

[2] The Court takes judicial notice of this exhibit to
Plaintiff's motion for emergency relief.  *See United States v.
Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document
is not attached to a complaint, it may be incorporated by
reference into a complaint if the plaintiff refers extensively to
the document or the document forms the basis of the plaintiff's
claim.").

increase because of his side effects, but nevertheless took the increased dose for three days, during which time his side effects worsened.  *Id.*

Officer Burrell then observed Plaintiff's condition and sent him to the medical unit.  *Id.*, PageId #11-13. Plaintiff told Nurse Practitioner Dyer that Dr. Devendra left instructions that he should be contacted immediately if Plaintiff experienced dizziness or cloudy vision.  *Id.*  Plaintiff was told that he was scheduled to see a specialist within the week and sent back to his housing unit.

The next day, January 14, 2016, Plaintiff saw Dr. Devendra, who diagnosed a severe adverse reaction to Tadaifill and instructed Plaintiff to stop taking it.  Dr. Devendra wrote a new prescription, for which there is no generic form.  Dr. Devendra sent another letter to FDC-Honolulu officials regarding Plaintiff's PAH diagnosis, explaining that without treatment, individuals with PAH have

> a median life expectancy about 2.5 yrs.  With proper treatment the median life expectancy is about 7 years.  Furthermore [Plaintiff] will

need frequent clinic visits on the range of
every 3 months with sooner appointments in
between as needed.  Treatment is with
medications that there are no generic forms.

*Id.*, PageID #15 (January 14, 2016 Devendra letter).

On February 2, 2016, after not receiving the newly
prescribed medicine, Plaintiff signed the present
Complaint.  Plaintiff alleges Defendants' failure to
provide him timely and adequate medical care violates
the First, Fifth, and Eighth Amendments (Counts I, II,
and III); constitutes a conspiracy to violate the Fifth
and Eighth Amendments (Counts III, IV, V); violates
RFRA (Count III); the ADA (unenumerated claim); the
FTCA (unenumerated claim); and constitutes a "threat to
safety" (Count VI).

Plaintiff names all Defendants in their official
and individual capacities and seeks compensatory and
punitive damages, lifetime medical care, and a transfer
to an "appropriate penal institution" for proper
medical care and/or immediate transfer to Mahoney Hale.

### III. <u>DISCUSSION</u>

Plaintiff's Complaint is somewhat of a shotgun pleading.  That is, Plaintiff sets forth one set of facts and then alleges in conclusory fashion that Defendants therefore violated and conspired to violate the First, Fifth, and Eighth Amendments, the ADA, the RFRA, and the FTCA, without regard to the differing pleading standards governing these constitutional provisions and statutes.

### A.    FTCA Claims Are Dismissed

Plaintiff alleges that Defendants negligently failed to provide him timely or adequate medical care.  The FTCA waives the United States' sovereign immunity for certain torts committed by federal employees.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477 (1994) (citing 28 U.S.C. § 1346(b)).  It provides district courts exclusive jurisdiction over civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the federal government while acting within

the scope of his office or employment.  28 U.S.C. § 1346(b).

The United States is the only proper defendant in a suit brought pursuant to the FTCA. *Fed. Deposit Ins. Corp. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1988); *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998).  "A claim against [a federal agency] in its own name is not a claim against the United States." *Kennedy*, 145 F.3d at 1078.  An agency is not a proper defendant under the FTCA. *Craft*, 157 F.3d at 706.

Plaintiff does not name the United States as a Defendant.  And, although he names FDC-Honolulu and its Health Services Unit, the DOJ, BOP, and the individual federal employees, this is insufficient to state a claim under the FTCA.

Further, "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993).  Before filing a lawsuit under the FTCA, a plaintiff must first present the claim to the appropriate federal agency, and the agency must

12

deny the claim.  *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013); *see* 28 U.S.C. § 2675(a).  The "timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA, and, as such, should be affirmatively alleged in the complaint." *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980).  "A district court may dismiss a complaint for failure to allege this jurisdictional prerequisite." *Id.*

Plaintiff fails to allege that he complied with the FTCA's administrative procedures through to conclusion by filing an administrative remedy with the BOP  before commencing this action.  The timing of Plaintiff's claims and filing date of the Complaint make such an allegation of exhaustion implausible: Plaintiff was prescribed the new medication on January 14, 2015, and only two weeks later he signed and submitted his Complaint for filing with this court.

As such, this court lacks subject matter jurisdiction over Plaintiff's FTCA claims.  *See Gillespie*, 629 F.2d at 640; *Franklin v. United States*,

13

2013 WL 2902844, at *2 (E.D. Cal. June 13, 2013)
(dismissing FTCA claim where pro se plaintiff in BOP
custody "failed to allege facts sufficient to satisfy
the Court that he [ ] complied with the exhaustion
requirements of the FTCA").  Plaintiff's FTCA claims
are DISMISSED.

**B.   ADA Claims Are Dismissed**

To state a claim under the ADA, a plaintiff must
allege that: (1) he or she is a qualified individual
with a disability; who was (2) excluded from
participation in or otherwise discriminated against
with regard to a public entity's services, programs, or
activities, and (3) such exclusion or discrimination
was *by reason of his or her disability*.  *See O'Guinn v.
Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir.
2007); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th
Cir. 2002).

Accepting that PAH qualifies as a disability under
the ADA, Plaintiff fails to allege that Defendants
discriminated against him or treated him differently
*because of* his PAH.  *See Duvall v. Cty. of Kitsap*, 260

14

F.3d 1124, 1138 (9th Cir. 2001) (Title II of the ADA requires intentional discrimination); *Alston v. Cty. of Sacramento Sheriff's Dep't*, 2015 WL 6689636, at \*4 (E.D. Cal. Oct. 30, 2015). Rather, Plaintiff alleges that Defendants failed to provide adequate care *for* his PAH. This is insufficient. *See Rucker v. Trent*, 2012 WL 4677741 at \*4 (N.D. Cal. Sept. 30, 2012) (stating, "the ADA prohibits discrimination because of a disability, not inadequate treatment for a disability"); *Brown v. Castillo*, 2007 WL 3054165 at \*16 (E.D. Cal. Oct. 19, 2007) (finding that, although inmate had a qualified disability, he failed to allege he was excluded from or denied a prison program based on his disability). Plaintiff fails to state a claim under the ADA and those claims are DISMISSED.

## C.  RFRA And First Amendment Claims Are Dismissed (Count III)

In Count III, Plaintiff broadly asserts that his "right to properly conduct an American Indian Pipe Ceremony is severely hindered because Plaintiff is not being treated for his medical condition." Compl., Doc.

15

No. 1, PageID #10.  Plaintiff suggests that his
resulting ill health prevents him from smoking a
ceremonial pipe or burning herbs for spiritual
cleansing.  Plaintiff concludes that Defendants
therefore violated his rights under the First Amendment
and RFRA.

### 1.   *RFRA*

RFRA provides broad protection against "laws that
are 'neutral toward religion,'" but nonetheless, "may
burden religious exercise as surely as law intended to
interfere with religious exercise."  *Burwell v. Hobby
Lobby Stores, Inc.*, 134 S. Ct. 2751, 2761 (2014).
"RFRA provides that '[g]overnment shall not
substantially burden a person's exercise of religion
even if the burden results from a rule of general
applicability,' unless the government 'demonstrates
that application of the burden to the person—(1) is in
furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that
compelling governmental interest.'"  *Holt v. Hobbs*, ---

U.S. ---, 135 S. Ct. 853, 860 (2015) (quoting 42 U.S.C. §§ 2000bb-1(a), (b)).

Plaintiff's allegations do not plausibly suggest that Defendants' alleged failure to properly treat his PAH was the *cause* of his inability to smoke tobacco and burn herbs, and thus, freely practice his religion. First, Plaintiff identifies no law, BOP rule, or regulation that Defendants invoked to deny him the right to smoke or burn tobacco or herbs to practice of his religion.

Second, Plaintiff does not allege any definable action by any specific Defendant, taken pursuant to a formal or informal prison rule or regulation, that substantially burdened the practice of his Native American religion.  Even if a Defendant told Plaintiff that he should not smoke because it might exacerbate his PAH, this is a medical opinion or advice, not a BOP rule or regulation preventing Plaintiff from smoking or burning ceremonial tobacco or herbs.  Stated differently, a prison's negligent or deliberate failure to treat an inmate, that results in the inmate's

17

inability to attend religious services, does not equate to the prison's promulgating a rule, regulation, or law that substantially burdens that inmate's religious exercise.

Plaintiff's conclusory allegation that Defendants' alleged failure to properly treat his PAH resulted in heightened symptoms and progression of his PAH, which in turn made it difficult, impossible, or simply unwise for him to smoke or burn ceremonial tobacco fails to state a claim under RFRA and is DISMISSED.

### 2. *First Amendment*

The Free Exercise Clause of the First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. First Amendment protections are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur v. Schriro*, 514 F.3d 878, 884–85

(9th Cir. 2008); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by Shakur*, 514 F.3d at 884-85.  A substantial burden exists where an inmate is denied "all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993), citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987); *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008) (holding the denial of all access to religious worship opportunities can violate the First Amendment).

As discussed above, Plaintiff identifies no federal law or BOP prison rule or regulation that Defendants invoked that substantially burdened his ability to freely exercise his religion by using tobacco consistent with his beliefs.  Medical advice does not constitute such a law.  Moreover, Plaintiff fails to allege that using a ceremonial pipe or burning herbs, particularly when he is suffering from a "serious heart and lung condition" is the only means of expressing his Native American religion.  Compl., Doc. No. 1, PageID #15.  Plaintiff's First Amendment claim is DISMISSED.

### D.  Bivens Claims

To state a cognizable *Bivens* claim, Plaintiff must allege that: (1) a right secured under the United States Constitution was violated, and (2) the violation was committed by a federal actor.  *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991); *see also Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006); *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988); *Daly–Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1988).

### 1.  *Official Capacity Claims Are Dismissed*

Plaintiff names all natural Defendants in their official and individual capacities, and otherwise names only federal agencies and a private company.  *Bivens* "recognized . . . an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citing *Bivens*, 403 U.S. at 91).  A *Bivens* claimant "seeks to hold federal

officers individually liable for constitutional violations." *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011); *see Malesko*, 534 U.S. 61, 70 (2001) ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations.").

Thus, a "*Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).  "This is because a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007).

Plaintiff's *Bivens* claims as alleged against Defendants Blackmon, Simon, Smith, Dayton, and John and Jane Doe in their official capacities, and against FDC-Honolulu, its Health Services Center, BOP, and DOJ are DISMISSED with prejudice.

## 2.   *Fifth Amendment Substantive Due Process Claims (Counts II, IV, V)*

Plaintiff invokes the Fifth Amendment without further explanation.  *See* Compl., Doc. No. 1, PageID #10-11 (Counts II, IV, V).  The court understands this to mean he alleges a violation of substantive due process.

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quotations and citations omitted).  However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (alterations in original) (quoting *Albright v. Oliver*, 510 U.S. 266,

22

273 (1994)); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996).

Plaintiff's claims fall squarely under the purview of the Eighth Amendment and he cannot also rely on substantive due process as a means of redress. Plaintiff's Fifth Amendment Claims, including those claims alleging a conspiracy to violate the Fifth Amendment, are DISMISSED.

### 3. *Respondeat Superior*

Plaintiff alleges Defendants "personally, professionally, through delib[e]rate ignorance, *respondant superior* [sic], policy, &/or custom violated or allowed violations to occur."  Suppl. to Compl., Doc. No. 14, PageID #89 (emphasis added).  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior" in a *Bivens* action. *Iqbal*, 556 U.S. at 676.  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff

23

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.; see OSU Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012) ("*Iqbal* makes crystal clear that constitutional tort claims against supervisory defendants turn on the requirements of the particular claim -- and, more specifically, on the state of mind required by the particular claim -- not on a generally applicable concept of supervisory liability.").  To the extent Plaintiff alleges any Defendant is liable under a theory of respondeat superior, such claims are DISMISSED with prejudice.

### 4.  *Eighth Amendment Claims (Counts I, VI)*

To state a constitutional claim for the delay or denial of medical care, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "Deliberate indifference is a

high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). If a prison official should have been aware of the risk but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Mere negligence, or even gross negligence, is not enough. *Farmer*, 511 U.S. at 835–36 & n.4.

Deliberate indifference may be shown (1) by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference; (2) when a prison official intentionally denies, delays, or interferes with medical treatment; or (3) by the way prison medical personnel respond to a

prisoner's medical needs.  *See Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

A defendant must purposely ignore or fail to respond to a prisoner's pain or medical need to establish deliberate indifference.  When a claim is based on delay in providing a specified treatment, a prisoner has no claim for deliberate medical indifference unless the delay was harmful.  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*).

Plaintiff alleges that he alerted all named Defendants employed at the FDC-Honolulu Health Services Center about his PAH diagnosis, worsening symptoms, and side effects from taking Tadaifill.  Plaintiff alleges he waited more than eight weeks from the date he entered FDC-Honolulu until he saw a doctor, another two weeks before he received his first prescription, and another two weeks before he was seen again for the allegedly significant and debilitating side effects he

was experiencing.  He further alleges that he was prescribed new medication on January 14, 2016, and as of the date of filing the Complaint had still not received this medication.[3]

At this stage of the proceedings, Plaintiff sufficiently alleges that he notified Defendants FDC-Honolulu Health Services Director S. Blackmon, Dr. Simon, D. Smith, and E. Dayton of his serious medical needs.  Although it is impossible to determine at this stage in the proceedings whether Defendants' responses to Plaintiff's medical needs were deliberately indifferent, negligent, or appropriate, Plaintiff sufficiently states a claim in Counts I and VI, as alleged against Defendants S. Blackmon, Dr. Simon, D. Smith, and E. Dayton in their individual capacities, and these claims shall proceed subject to further adversarial proceedings.

### 5.  *Conspiracy (Counts III, IV, V)*

---

[3] At the February 17, 2016 status conference, Plaintiff stated he had not received the medication.  And, on his March 3, 2015 Motion for Hearing, signed February 25, 2016, Plaintiff reiterated that he had not yet received the medication.  *See* Doc. Nos. 10, 16.

Plaintiff alleges Defendants conspired to violate his constitutional rights.  To state a conspiracy claim, a plaintiff "must show 'an agreement or 'meeting of the minds' to violate constitutional rights.'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citation omitted).  A court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).  "A mere allegation of conspiracy without factual specificity is insufficient."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); *see also Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy did not support a § 1983 claim).

Plaintiff alleges no facts supporting an agreement or meeting of the minds between Defendants to deny or delay him medical care.  To the extent Counts III, IV,

28

and V allege conspiracy claims, they fail to state a claim and are DISMISSED.


### 6.   *Doe Defendants and ABC Company are Dismissed*

Plaintiff names John and Jane Doe and "ABC Company" as Defendants to this suit.  He provides no information regarding these anonymous parties' identities or connection to his claims.  The Federal Rules of Civil Procedure neither authorize nor expressly prohibit the use of fictitious parties, although Rule 10 requires a Plaintiff to include the names of all parties in the action in his complaint.  Fed. R. Civ. P. 10(a).  The use of doe defendants is generally disfavored because, as a practical matter, it is impossible in most instances for the United States Marshal to serve an anonymous defendant.

If the names of individual defendants are unknown at the time a complaint is filed, however, a plaintiff may refer to unknown defendants as Defendant John Doe

1, John Doe 2, John Doe 3, and so on, but he must go further and allege facts to support how each particular doe defendant violated his constitutional rights.  The plaintiff may thereafter use the discovery process to obtain the names of doe defendants and seek leave to amend to name those defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

If Plaintiff decides to amend his Complaint, he must provide specific facts regarding John and Jane Doe and ABC Company's connection to and participation in his alleged violations.  *If* he provides such details, and the Complaint is not otherwise subject to dismissal, he may later be allowed to discover their identities and amend his pleading accordingly.  Until then, Defendants John and Jane Doe and ABC Company are DISMISSED.

## IV.   <u>LEAVE TO AMEND</u>

Plaintiff's claims under the FTCA, ADA, RFRA, and the First and Fifth Amendments, and all claims in Counts II, III, IV, and V are DISMISSED.  Plaintiff may file an amended complaint on or before **April 4, 2016** curing the deficiencies noted in these claims if possible.  If Plaintiff elects to file an amended complaint, it must (1) contain short, plain statements explaining how Defendants violated his rights in light of the discussion above; (2) be designated as the "First Amended Complaint;" and (3) be retyped or rewritten in its entirety on court-approved forms. Plaintiff may not incorporate any part of the original Complaint by reference without court approval.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992).  Claims "that have been dismissed with leave to amend and are not repled in the amended complaint will be considered waived."  *Id.* at 928.[4]

---

[4] Claims that have been dismissed without leave to amend need not be repled in an amended complaint to preserve them for appeal.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925, 928 (9th
(continued...)

If Plaintiff does not file an amended complaint on or before **April 4, 2016**, the court will direct service of the Complaint, Counts I and VI, on Defendants S. Blackmon, Dr. Simon, D. Smith, and E. Dayton in their individual capacities only.

## V.   CONCLUSION

1.   The Complaint is DISMISSED IN PART for Plaintiff's failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).   Specifically,

(a)   Counts I and VI state a cognizable claim for relief under the Eighth Amendment against Defendants S. Blackmon, Dr. Simon, D. Smith, and E. Dayton in their individual capacities only and is appropriate for service; and

(b)   Counts II, III, IV, V, and Plaintiff's claims as alleged under the FTCA, RFRA, ADA, First and Fifth Amendments fail to state a claim and are DISMISSED.

---

[4](...continued)
Cir. 2012).

32

2.  Plaintiff may file an amended complaint on or before **April 4, 2016**, curing the specific deficiencies noted above, if possible.  In the alternative, Plaintiff may stand on his claims in Counts I and VI, as alleged against Defendants S. Blackmon, Dr. Simon, D. Smith, and E. Dayton in their individual capacities only, and the Complaint will be served as to those claims.  If Plaintiff elects to stand on these claims, he must notify the court of his decision on or before **April 4, 2016.** If Plaintiff fails to notify the court or file a timely amended complaint, the court will order the Complaint, Counts I and VI only, served on Defendants S. Blackmon, Dr. Simon, D. Smith, and E. Dayton in their individual capacities.

3.  The Clerk is DIRECTED to send Plaintiff a prisoner civil rights complaint form so that he may comply with this order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 7, 2016.

33



　　　　　　　　　　　　　　/s/ Leslie E. Kobayashi
　　　　　　　　　　　　　　Leslie E. Kobayashi
　　　　　　　　　　　　　　United States District Judge

*Seina v. Fed'l Detention Ctr.,* 1:16-cv-00051 LEK/BMK;