IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARK ANTHONY SEINA, BOP #13272-097, | ) ) ) | CIV. NO. 16-00051 LEK/KJM |
| Plaintiff, | ) ) | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART |
| vs. | ) ) ) | |
| UNITED STATES OF AMERICA, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART**

Plaintiff Mark Anthony Seina, a Federal Detention Center-Honolulu ("FDC-Honolulu") inmate, appearing pro se and in forma pauperis, brings this action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); the Federal Tort Claims Act ("FTCA");[1] and Title II of the Americans With Disabilities Act ("ADA"),[2] against numerous federal Defendants.[3]

_____

[1] 28 U.S.C. §§ 1346(b), 2671-2680.

[2] 42 U.S.C. § 12132, et seq.

[3] Plaintiff names: (1) the United States, (2) the Department of Justice ("DOJ"), (3) the Federal Bureau of Prisons ("BOP") in their official capacities; and (4) BOP Western Region Clinical Director Dr. Pelton, (5) FDC-Honolulu and employees (6) Health Service Administrator S. Blackmon, (7) Dr. Simon, (8) Physician's Assistant ("PA") D. Smith, (9) E. Dayton, RN, (10) Education/
(continued...)

The court screened Plaintiff's original Complaint, Doc. No. 1, dismissed it in part, and ordered him to either file an amended complaint or notify the court of his willingness to proceed on his Eighth Amendment claims in Counts I and VI only, as alleged against Defendants Blackmon, Simon, Smith, and Dayton in their individual capacities.  Doc. No. 18, ("March 7 Order"). On March 22, 2016, Plaintiff filed the First Amended Complaint ("FAC"), now before the court.  FAC, Doc. No. 23.

The court has screened the FAC pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1), and finds that it fails to state a claim for relief in part.  Plaintiff's *Bivens* claims as alleged against all Defendants in their official capacities are DISMISSED with prejudice.

Plaintiff's *Bivens* claims under the First, Fifth, and Eighth Amendments in Counts I, III, IV, V, VI, as alleged against all Defendants in their individual

---

[3](...continued)
Recreation Administrator L. Boyd, Case Managers ("CM") (11) L. Cintron and (12) Lazo, in official and individual capacities.  He names John Does 1 and 2, and Jane Does 1 and 2 within the FAC's body.

capacities fail to state a claim and are DISMISSED without prejudice.

Plaintiff's FTCA claims fail to state a claim and are DISMISSED without prejudice.

Plaintiff's ADA claim in Count II, as alleged against Defendant L. Boyd, regarding the denial of a DVD/TV to accommodate Plaintiff's participation in a comparable exercise program as that afforded other inmates, states a claim and shall be served.

Plaintiff's remaining claims under the ADA in Count II are DISMISSED without prejudice.

The court will direct service on Defendant L. Boyd regarding Plaintiff's claims in Count II by separate order.

## I.   STATUTORY SCREENING

The court must screen all civil actions brought by prisoners challenging prison conditions or seeking redress from a government entity, officer, or employee. 28 U.S.C. § 1915A(a).  Complaints or claims that are frivolous, malicious, fail to state a claim, or seek relief from a defendant who is immune from such relief

3

must be dismissed.  28 U.S.C. § 1915(e)(2); 28 U.S.C.
§ 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint that lacks a cognizable legal theory,
or contains insufficient facts under a cognizable legal
theory, fails to state a claim.  *Balistreri v. Pacifica
Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A
sufficient pleading contains a "short and plain
statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This
requires more than a "the-defendant-unlawfully-harmed-
me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009).  "Threadbare recitals" of a cause of action,
supported by conclusory statements, are insufficient.
*Id.*  A complaint must plead "enough facts to state a
claim to relief that is plausible on its face."  *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plausibility is "a context-specific" determination
"that requires . . . judicial experience and common
sense."  *Iqbal*, 556 U.S. at 679.  When "the well-
pleaded facts do not permit the court to infer more
than the mere possibility of misconduct," the complaint

fails to "'show' — 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Pro se complaints are construed liberally, in the light most favorable to the pleader, and all allegations of material fact are accepted as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*); *Hebbe v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010).  A pro se prisoner's complaint is "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 551 U.S. at 94.  Leave to amend should be granted unless amendment appears futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II.  <u>**BIVENS CLAIMS: COUNTS I, III, IV, V, VI**</u>

To state a cognizable *Bivens* claim, Plaintiff must allege that: (1) a right secured under the United States Constitution was violated, and (2) the violation was committed by a federal actor.  *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991); *see also Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006); *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988);

*Daly–Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1988).

## A. Official Capacity Claims

Plaintiff names all natural Defendants in their official and individual capacities, and otherwise names the United States and its agencies the DOJ, BOP, and FDC-Honolulu. *Bivens* recognizes "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citing *Bivens*, 403 U.S. at 91). *Bivens* allows a claimant "to hold federal officers *individually* liable for constitutional violations." *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011) (emphasis added); *see Malesko*, 534 U.S. 61, 70 (2001). As the March 7 Order explained, a "*Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Daly-Murphy*, 837 F.2d at 355.

Plaintiff's *Bivens* claims as alleged against Defendants Blackmon, Simon, Smith, Dayton, Boyd,

Cintron, Lazo, Pelton, John Doe 1-2, Jane Doe 1-2, in
their official capacities, and against the United
States, DOJ, BOP, and FDC-Honolulu are DISMISSED with
prejudice.

## B.   Eighth Amendment Claims: Counts I, VI

To state a constitutional claim for the denial or
delay of medical care, a plaintiff must show that the
defendant acted with "deliberate indifference to
serious medical needs." *Jett v. Penner*, 439 F.3d 1091,
1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429
U.S. 97, 104 (1976)).  "Deliberate indifference is a
high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,
1060 (9th Cir. 2004).  To be held deliberately
indifferent, a prison official must "be aware of facts
from which the inference could be drawn that a
substantial risk of serious harm exists," and "draw the
inference." *Farmer v. Brennan*, 511 U.S. 825, 837
(1994).  A prison official who should have been aware
of the risk but was not, has not violated the Eighth
Amendment.  *Gibson v. Cty. of Washoe*, 290 F.3d 1175,
1188 (9th Cir. 2002).  Simple negligence, or even gross

negligence, is not sufficient.  *Farmer*, 511 U.S. at
835–36 & n.4.

A prisoner may show deliberate indifference (1)
when a prison official purposely acted or failed to
respond to a prisoner's pain or medical need, and harm
caused by the indifference; (2) when a prison official
intentionally denies, delays, or interferes with
medical treatment; or (3) by the way prison medical
personnel respond to a prisoner's medical needs.  *See
Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

When a claim is based on delay in providing a
specified treatment, a prisoner has no claim for
deliberate medical indifference unless the delay was
harmful.  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th
Cir. 1992), *overruled on other grounds*, *WMX Tech., Inc.
v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en
banc*).

### 1.  *Background*

Plaintiff arrived at FDC-Honolulu on October 17,
2015.  He immediately informed Defendant RN Dayton at
intake that he was diagnosed recently with Pulmonary

Arterial Hypertension ("PAH"), and had just been released from the Pali Momi Medical Center emergency room that day, where he was seen for dizziness, difficulty breathing, and feeling faint.[4]  Plaintiff told Dayton that he had a follow-up appointment with his specialist on November 12, 2015.  Plaintiff asked how to receive his medicine, and Dayton told him to inform staff about his PAH at his initial medical evaluation in two weeks and ask about his medication at that time.

When Plaintiff was moved to housing unit 5B, he told Officer Gonzalez that he was having difficulty breathing and feeling faint.[5]  He was sent to the medical unit where Defendant PA Smith examined him. Smith knew of Plaintiff's PAH diagnosis, and told Plaintiff that his symptoms were not life-threatening

---

[4] PAH is defined as high blood pressure in the lungs. WebMD, http://www.webmd.com/lung/pulmonary-arterial-hypertension. (last visit 5/12/2016).  Common PAH symptoms are shortness of breath, dizziness, fatigue, chest pain, fainting, and swelling in the arms, legs, ankles, or abdomen. *Id.*; Pulmonary Hypertension Association: http://www.phassociation.org/Patients/PHSymptoms.

[5] Plaintiff says this occurred in "Oct. 2015," but does not provide the date.  FAC, Doc. No. 23, PageID #169.

or a medical emergency.  He reminded Plaintiff to inform the medical unit of his PAH at his initial medical evaluation.

Plaintiff does not allege when his initial medical screening took place or detail what was discussed.  His medical records allegedly arrived at FDC-Honolulu on or about November 6, 2015.  Defendant Dr. Simon received and reviewed Plaintiff's records on November 18, 2015. Dr. Simon immediately requested an outside consultation with a specialist, and notified Plaintiff that he had done so.  This outside consultation required approval from a "utilization committee."  FAC, Doc. No. 23, PageID #185.  Plaintiff complains that Dr. Simon did not contact his specialist earlier and disagrees with his level of care designation of Level 1.

Plaintiff says he notified all FDC-Honolulu staff that he was "dying."[6]  He was told to be patient, that his outside consultation with a specialist had been approved.  *Id.*, PageID #170.

---

[6] Plaintiff was told that PAH patients have a life expectancy of two to seven years after diagnosis.

10

On December 16, 2015, while waiting in the pill line, Plaintiff asked Defendant Dayton to see a doctor because of his pronounced PAH symptoms. Dayton said, "ok," but Plaintiff complains that she failed to write his request down. Plaintiff was sent to outside specialist Dr. Devendra the next day, however, who examined him and prescribed Tadaifill for his PAH symptoms. Plaintiff received his Tadaifill prescription on December 29, 2015. In the interim, however, Plaintiff notified his family that he had not received the prescription. His family contacted Dr. Devendra, who faxed a letter to FDC-Honolulu on December 31, 2015, explaining that Plaintiff has a serious heart/lung condition that requires chronic medications, and noting that a failure to take these prescribed medications will result in early worsening of Plaintiff's condition.[7]

---

[7] The FAC refers to "Affidavits A and B," which Plaintiff submitted on February 10, 2016, in support of his Motion for Emergency Relief. *See* Doc. No. 6-2. Plaintiff claims that Devendra sent a new prescription for different medication with this letter/fax, but this is not evident from the document.

Plaintiff began experiencing dizziness, headaches, blurred vision, and swelling in his knee after beginning Tadaifill.  Nevertheless, unnamed FDC-Honolulu Health Service staff increased Plaintiff's dosage, per Dr. Devendra's order, on or about January 12, 2016.  Plaintiff's symptoms increased, and two days later, on January 14, 2016, he was sent back to Dr. Devendra.  Dr. Devendra ordered a new prescription on January 17, 2016.  FAC, Doc. No. 23, PageID #182.  He also notified FDC-Honolulu that there is no generic form for this medicine.  *See* Doc. No. 6-2, PageID #34.  Dr. Devendra stated that, with treatment, PAH patients' life expectancy is about seven years, without treatment, it decreases to about two and a half years.  Plaintiff signed his original Complaint on February 2, and this action was received and filed on February 5, 2016.  FDC-Honolulu thereafter approved the new medication and Plaintiff received it on February 26, 2016.

### 2. *Analysis*

Plaintiff alleges Dayton, Smith, Simon, Blackmon, FDC-Honolulu Health Services' staff, and John and Jane Does #1 posed a threat to his safety and violated the Eighth Amendment.  *See* FAC, Doc. No. 23, PageID #168-71 (Count I); PageID #186-87 (Count VI).

Although the court found that, liberally construed, Plaintiff's claims against Dayton, Blackmon, Smith, and Simon stated a claim in the original Complaint, the FAC's clarification of events renders Plaintiff's Eighth Amendment claims against all Defendants insufficient to state a claim.

First, RN Dayton processed Plaintiff into FDC-Honolulu on October 17, 2015.  Plaintiff told her of his PAH diagnosis, and that he had been seen at Pali Momi that day for PAH-related symptoms and was released.  Dayton answered Plaintiff's questions and told him to inform Health Services of his PAH diagnosis and concerns at his initial medical evaluation in approximately two weeks.  Plaintiff saw Dayton a month later while in the pill line, and told her he needed to

see a doctor.   Plaintiff saw Dr. Devendra the next day.

Regardless of whether Dayton wrote Plaintiff's request

down, these facts do not support a finding that Dayton

purposely denied or delayed Plaintiff needed medical

treatment with deliberate indifference to his serious

medical needs.

Second, Plaintiff saw PA Smith in "Oct. 2015,"

after he was assigned housing unit 5B.   *See* FAC, Doc.

No. 23, PageID #169.   Smith examined Plaintiff, noted

his PAH diagnosis, and told him his symptoms did not

constitute a medical emergency.   Smith explained that

Plaintiff should notify Health Services of his PAH

diagnosis and complaints at his scheduled medical

evaluation.   Plaintiff alleges no other contact with PA

Smith.   These facts are insufficient to state an Eighth

Amendment violation against PA Smith.

Third, Dr. Simon received Plaintiff's medical

records on or about November 18, 2015, reviewed them,

and immediately requested an outside specialist

consultation for Plaintiff.   Plaintiff alleges nothing

further against Dr. Simon.   Although Plaintiff says

14

that his medical records arrived at FDC-Honolulu on or about November 6, 2015, and faults Dr. Simon for not reviewing them immediately, or calling his specialist sooner, this does not equate to deliberate indifference by Dr. Simon.

Fourth, Plaintiff vaguely alleges that Health Service Administrator Blackmon and unnamed staff are liable for the delays he encountered in receiving his prescriptions.  Both drugs required BOP approval because they were not on FDC-Honolulu's formulary, necessitating a wait.  Plaintiff fails to allege facts showing that any Defendant intentionally delayed or interfered with his medical treatment with deliberate indifference to his medical needs.  After Dr. Devendra ordered the first prescription, Health Services waited for BOP approval, then dispensed the drug as prescribed by Dr. Devendra.  Plaintiff was sent back to Dr. Devendra two days after he experienced an apparent reaction to the drug, when Health Services increased the dosage after fourteen days, per Dr. Devendra's

orders.  This does not support an intentional act to delay, interfere with, or deny Plaintiff treatment.

When Dr. Devendra prescribed the second medication, which is not available in generic form or in the FDC-Honolulu formulary, Health Services awaited BOP approval to receive and dispense the drug.  Two weeks later, Plaintiff filed this suit.  While the second wait was longer than the first, this does not show that any Defendant intentionally delayed Plaintiff's treatment or interfered with Dr. Devendra's order.  Although Plaintiff alleges these delays *may* have exacerbated his life expectancy, this is Plaintiff's layman's conclusion only.  Plaintiff alleges no harm from the delays, other than a continuation of the PAH symptoms that he had been experiencing due to his PAH, and his own worries concerning the delay.  These facts may support a negligence claim, but they do not support an Eighth Amendment violation.

Finally, Plaintiff fails to allege Health Services Administrator Blackmon's personal involvement in his claims, beyond Plaintiff's vague allegation that he

16

notified all FDC-Honolulu staff that he was dying. Blackmon cannot be held liable for violating Plaintiff's rights simply because he is a supervisor, unless Blackmon was personally involved in the constitutional deprivation, or there is a sufficient causal connection between Blackmon's specifically alleged wrongful conduct and the constitutional violation alleged. *Starr v. Baca*, 633 F.3d 1191, 1196 (9th Cir. 2011). Plaintiff fails to show Blackmon's personal involvement or any causal connection between Blackmon and his allegations.

Plaintiff's claims reflect his disagreement with FDC-Honolulu's Health Service's staff regarding the course and speed of his treatment. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to [a civil rights] claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). A difference of opinion amounts to deliberate indifference only when the prisoner shows "that the course of treatment the doctors chose was medically

17

unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Plaintiff's recitation of Defendants' conduct does not support this theory.

Plaintiff fails to state a claim under the Eighth Amendment against Defendants FDC-Honolulu Health Services Director S. Blackmon, Dr. Simon, D. Smith PA, E. Dayton RN, or any unnamed FDC-Honolulu employee. Counts I and VI are DISMISSED without prejudice.

## C.  Fifth Amendment Equal Protection Claim: Count III

Plaintiff alleges the United States, DOJ, BOP, John and Jane Does, CM Lazo, CM Cintron, and L. Boyd violated his rights to equal protection under the Fifth Amendment.  First, he alleges the BOP's denial of more than thirty days in a Residential Reentry Center ("RRC") violated his due process/equal protection rights.  Second, he alleges his transfer to housing

unit 4B violated his due process/equal protection
rights.

"The liberty protected by the Fifth Amendment's Due
Process Clause contains within it the prohibition
against denying to any person the equal protection of
the laws." *United States v. Windsor*, 133 S. Ct. 2675,
2695 (2013); *United States v. Navarro*, 800 F.3d 1104,
1115 (9th Cir. 2015) (citing *Weinberger v. Wiesenfeld*,
420 U.S. 636, 638 n.2 (1975)).  Thus, the Due Process
Clause of the Fifth Amendment prohibits unjustified
discrimination by federal actors, and Fifth Amendment
equal protection claims are treated the same as
Fourteenth Amendment equal protection claims.

The Equal Protection Clause requires that persons
who are similarly situated be treated alike. *City of
Cleburne v. Cleburne Living Ctr., Inc.*, 472 U.S. 432,
439 (1985); *Hartmann v. Cal. Dep't of Corr. & Rehab.*,
707 F.3d 1114, 1123 (9th Cir. 2013).  An equal
protection claim may be established by showing that
Defendants intentionally discriminated against

Plaintiff based on his membership in a protected class, *Hartmann*, 707 F.3d at 1030, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-602 (2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

### 1.  *Claims Regarding RRC Placement*

Plaintiff was sentenced to eight months incarceration pursuant to revocation of probation or supervised release on November 4, 2015.[8]  The BOP determined that Plaintiff was suitable for thirty days at an RRC before this term expired.  In December 2015, Plaintiff questioned CM Lazo regarding what "fair and impartial" basis she used in her referral to the BOP regarding his eligibility for RRC placement.  She

---

[8] The court takes judicial notice of Plaintiff's federal criminal proceedings in *United States v. Seina*, CR. No. 1:06-cr-00470 HG. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (allowing judicial notice of proceedings directly related to issues alleged in the complaint).  Supervised release was revoked on November 5, 2015; Plaintiff's scheduled release date is June 18, 2016.

allegedly replied, "Why should you get more than 6
months halfway house, it's unfair to other inmates."
FAC, Doc. No. 23, PageID #177.

To the extent Plaintiff challenges the BOP's
determination that he receive only thirty days in an
RRC, as based on CM Lazo's recommendation, he must
raise this claim in a petition for writ of habeas
corpus pursuant to 28 U.S.C. § 2241.  *See Hernandez v.
Campbell*, 204 F.3d 861, 864 (9th Cir. 2000)
("Generally, . . . petitions that challenge the manner,
location, or conditions of a sentence's execution must
be brought pursuant to § 2241 in the custodial
court."); *Tucker v. Carlson*, 925 F.2d 330, 331 (9th
Cir. 1990) (same); *Blankenship v. Meeks*, 2011 WL
4527408, at *2 (D. Haw. Sept. 28, 2011) (challenging
BOP decision to deny application for transfer to RRC
from FDC-Honolulu).  This portion of Count III is
DISMISSED without prejudice to refiling in a petition
for writ of habeas corpus under 28 U.S.C. § 2241.

   *2.  Claims Regarding Transfer to Housing Unit 4B*

Plaintiff next states that, in October 2015, the BOP and FDC-Honolulu approved his request to smoke tobacco while engaging in Native American pipe ceremonies.  In November 2015, Plaintiff was moved to housing unit 5A, which is normally for sentenced inmates and offers rehabilitation and reintegration programs.  In November and December 2015, several other 5A inmates asked to participate in Plaintiff's pipe ceremonies (and consequently, be allowed to smoke).  In December 2015, John or Jane Does transferred Plaintiff to housing unit 4B, which is generally for pre-trial and immigration detainees, or inmates with co-defendants, and has restricted programs.  Plaintiff was told he was transferred for "management purposes." FAC, Doc. No. 23, at PageID #178.  Plaintiff claims this violated his right to equal protection under the Fifth Amendment.

First, Plaintiff does not allege that any Defendant intentionally discriminated against him by denying him permission to perform Native American Pipe Ceremonies. He admits his request was granted and accommodated.

22

Rather, Plaintiff states that his practicing the pipe ceremony created management issues with other inmates in 5A, and that he was transferred to address those prison management issues.  Plaintiff does not allege that other Native American inmates who performed the pipe ceremony were allowed to stay in 5A. Thus, he was not similarly situated to the other inmates who remained in 5A.  Plaintiff's equal protection claim regarding his transfer from 5A to 4B fails to state a claim and is DISMISSED without prejudice.

Plaintiff further alleges that Defendant Cintron called him a cry baby and made semi-lewd comments when they were passing the women's housing unit.  These harassing comments, while unprofessional and inappropriate, do not violate the Constitution, and are DISMISSED without prejudice. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.")

(quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).[9]

Finally, to the extent Plaintiff simply complains that he was transferred to a less amenable cell in violation of the Fifth Amendment's Due Process clause, he fails to state a claim.  An inmate has no liberty interest in actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  The Due Process Clause contains no embedded right of an inmate to remain in a prison's general population or in the housing unit of his choice.  *Id.* at 485-86.

Transfer "to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468

---

[9] Plaintiff's allegation that Cintron denied him an informal grievance form, and Boyd denied him extra law library time and exercise are discussed below.

(1983), *overruled on other grounds by Sandin*, 515 U.S. at 472-73.  "Thus, the hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, does not violate the due process clause because there is no liberty interest in remaining in the general population." *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995).

Plaintiff's transfer to 4B was within the term of his sentence and clearly taken to enable better management of the housing units.  This does not violate the Due Process Clause of the Fifth Amendment.  Count III is DISMISSED without prejudice.

## D.  First Amendment Retaliation: Count IV

In Count IV, Plaintiff broadly asserts that Defendants retaliated against him in violation of the First Amendment.  Plaintiff says his mail was stopped for a period in November 2015, and his girlfriend received twelve returned envelopes, some opened.  He

complains that prison officials failed to notify him on a BP-A0328 form that this mail had been returned, as required by prison policy.

Plaintiff reiterates that he was transferred to housing unit 4B after other 5A inmates began requesting to participate in his Native American pipe ceremony, although he was a model inmate.

Plaintiff claims he was "forced" to continue taking Tadaifill despite his adverse reaction. *Id.*  He claims the drug's side effects made him so ill they hindered his ability to perform the "Sacred Pipe Ceremony."  *Id.*

Plaintiff claims he arose at 4:30 a.m. to work, but was told at the 5:00 a.m. that he was not scheduled. Plaintiff complains that he wasn't notified earlier.

Plaintiff complains that, in January 2016, he requested to attend the law library, but housing unit 4B's scheduled library time was Friday mornings, when he was also scheduled to work, so he was forced to choose between attending the law library or working.

Plaintiff alleges he filed staff requests and grievances between October 2015 and February 2015,

which were rejected on "small merits" *id.,* and that he had grievance issues "with Unit team and Health services: classification, transfer[], proper timely medical attention, and proper treatment."  *Id.* at 181. Plaintiff alleges these facts show that Defendants retaliated against him for filing grievances.

### 1. *Legal Standard*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so," *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th

Cir. 2009)), and even the mere threat of harm can be
sufficiently adverse to support a retaliation claim,
*Brodheim*, 584 F.3d at 1270.

### 2. Analysis

Although filing grievances is protected conduct,
Plaintiff's allegations of returned mail, transfer to
another housing unit, cancelled work status, being
forced to continue Tadaifill, and required to choose
between work and law library do not support an
inference that adverse actions were taken against him
(1) for filing grievances and (2) in the absence of a
legitimate correctional goal.

First, Plaintiff does not identify what protected
action he took that caused mailroom personnel to
retaliate by rejecting mail from Plaintiff's
girlfriend.  Prison policy allows officials to open and
read incoming mail (to check for contraband or criminal
planning).  Although they failed to provide Plaintiff a
form notifying him that some of his mail was returned,
he clearly was learned about it later.  Plaintiff does

not allege any further instances of his mail being
delayed or returned.  This does not plausibly suggest
that Defendants retaliated against him for protected
conduct without a legitimate penological reason.

Second, Plaintiff was transferred to 4B because of
the prison management problems with *other* 5A inmates
who also wanted to smoke or participate in Plaintiff's
pipe ceremonies.  This caused predictable prison
management issues.  Plaintiff was not transferred
*because* he was practicing his religion, however, so he
fails to allege what protected conduct he engaged in to
provoke retaliation.  The transfer also appears based
on Plaintiff's health limitations.  These are both
legitimate correctional goals.

Third, Plaintiff does not explain who "forced" him
to take Tadaifill, or how this was done.  Plaintiff's
ill health made him too sick to smoke, whether due to
his PAH or to the medicines Dr. Devendra prescribed.
This does not support an inference that any Defendant
intentionally interfered with his right to practice the

pipe ceremony, or took an adverse action against him in retaliation for exercising such First Amendment rights.

Fourth, Plaintiff's allegation that he was denied work on one hand, and forced to choose between work or law library on Fridays while he was housed in 4B, neither makes sense, shows an adverse action, nor refutes legitimate correctional goals of scheduling law library times to suit correctional needs, and restricting work for inmates on special, medical status. Plaintiff was not *denied* access to the law library; rather, he complains that he was denied *extra* law library sessions. FAC, Doc. No. 23, PageID #176, #179. He admitted in his original Complaint that he had weekly law library sessions.

Finally, Plaintiff has filed grievances since October 2015. He then filed the present lawsuit with numerous motions, exhibits, requests, and letters. He states that he has continued filing grievances since he commenced this action. Yet he does not explain how his First Amendment right to petition the government has been chilled.

Plaintiff's allegations amount to nothing more than his own conclusory speculation that Defendants' actions were retaliatory. "Mere speculation that [a defendant] acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014); *see also Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (discussing "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'") (citing *Choe v. INS*, 11 F.3d 925, 938 (9th Cir. 1993) (Alarcon, J., concurring and dissenting). The FAC lacks specific facts which support improper motive on any Defendant's part. *Watison*, 668 F.3d at 1114. Like the original Complaint, there are no facts supporting Plaintiff's shotgun assertion that Defendants took adverse actions because he filed grievances or this suit. Although Plaintiff is proceeding pro se and this is the pleading stage, this mere possibility of misconduct fails to support a claim. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

31

Plaintiff fails to state a retaliation claim under the First Amendment against any Defendants.  Count IV is DISMISSED without prejudice.

## E.   Conspiracy: Count V

Plaintiff alleges Defendants conspired to violate his rights under the First, Fifth, and Eighth Amendments, and the ADA.  He reiterates the allegations in Counts I-VI, and alleges that, because all Defendants must organize and work together in the "chain of command" to discuss issues regarding inmates, this administrative coordination of Unit Teams, Education Services, Health Services, and Utilization Committee, satisfies his conspiracy theory.

First, Plaintiff fails to sufficiently allege a First, Fifth, or Eighth Amendment violation, precluding any claim that Defendants conspired to deny these constitutional rights.

Second, Plaintiff again fails to show an "agreement or 'meeting of the minds' to violate constitutional rights,'" between any Defendants, beyond the fact that

they all work at FDC-Honolulu, or for the BOP, DOJ, or United States.  *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citation omitted).  This is insufficient; the court cannot "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001).  An "allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi*, 839 F.2d at 626; *see also Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy do not support a civil rights claim).

Plaintiff's conspiracy claims fail to state a claim.  Count V is DISMISSED without prejudice.

## II.  <u>ADA CLAIMS: COUNT II</u>

Plaintiff broadly alleges Defendants discriminated against him under the ADA.  In support of this claim, Plaintiff points to his transfer to housing unit 4B. He alleges Defendant Cintron denied his request for an

informal grievance (although he admits he was told to submit these requests to a counselor).  He alleges Cintron made derogatory remarks about female inmates in 4A, and he and Plaintiff exchanged words.

Plaintiff alleges Defendant Boyd denied his requests for extra law library time on February 8, 12, and 19, 2016, although Plaintiff had a pending civil suit in this court.  Boyd allegedly denied Plaintiff's requests because Plaintiff "had no pending matters before the court involving discovery."  FAC, Doc. No. 23, PageID #174.

On February 19, 2016, recreation specialist Curran wrote a memorandum so Plaintiff could use the 4B classroom "to watch yoga and meditation videos to conform with his medical restrictions."  *Id.*  On March 10, 2016, Plaintiff requested a DVD player be brought to the 4B classroom, so he could "perform exercise which my disability of (PAH) allows."  *Id.* Boyd denied this request, stating, "Please utilize[] the equipment provided in the designated rec area." *Id.*  Plaintiff alleges that other inmates without

34

health issues are allowed to use a DVD to watch
exercise videos.  Boyd denied another similar request
on March 15, 2016.

### 1.  Legal Standard

To state a claim under the ADA, a plaintiff must
allege that: (1) he or she is a qualified individual
with a disability; who was (2) excluded from
participation in or otherwise discriminated against
with regard to a public entity's services, programs, or
activities, and (3) such exclusion or discrimination
was *by reason of his or her disability*.  *See O'Guinn v.
Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir.
2007); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th
Cir. 2002).

The ADA applies to inmates.  *See Penn. Dep't of
Corr. v. Yeskey*, 524 U.S. 206, 208-210 (1998)
(acknowledging that "[m]odern prisons provide inmates
with many recreational 'activities,' medical
'services,' and educational and vocational 'programs,'
all of which at least theoretically 'benefit' the

prisoners (and any of which disabled prisoners could be 'excluded from participation in')"); *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010) (noting decisions affirming that ADA and RA apply to state prisoners); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (applying ADA and RA to prisoner's claims).

Accepting that PAH qualifies as a disability under the ADA, Plaintiff's allegation that he was denied a DVD/TV to play his exercise videos while other, non-disabled inmates were allowed a DVD/TV to play exercise videos, states a claim under the ADA and shall proceed and be served against Defendant L. Boyd.

Plaintiff's claims regarding his transfer to 4B, denial of extra law library session, and directions to follow prison policy regarding grievances fail to state a claim under the ADA and are DISMISSED without prejudice.

## IV.   __FTCA CLAIMS__

Plaintiff alleges jurisdiction under the FTCA, but allege no cause of action under the FTCA.   Because he now names the United States as a Defendant, *see Fed. Deposit Ins. Corp. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1988), the court liberally construes Counts I and VI as also alleging a negligence claim under the FTCA against the United States.   *See Karim-Panahi*, 839 F.2d at 623; *Payne v. Gastelo*, 2016 WL 1588478, at *2 (C.D. Cal. Apr. 19, 2016).

The FTCA provides district courts exclusive jurisdiction over civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the federal government while acting within the scope of his office or employment.   28 U.S.C. § 1346(b).

Under the FTCA, a claim must be filed with the appropriate federal agency within two years of its accrual and suit must be commenced within six months of

the agency's denial of the claim.  *See* 28 U.S.C. § 2401(b); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").  The administrative claim must specify the amount of compensation requested, and a plaintiff may not later seek an amount in excess of the administrative claim.  28 U.S.C. § 2675.  If the agency does not dispose of the administrative claim within six months, the claimant may consider the lack of decision to be a final denial, and proceed with the filing of a civil action.  *Id.*  If the agency denies the administrative claim, suit must be filed within six months of the date of mailing of such denial.  *Id.*

"[T]he FTCA's time bars are nonjurisdictional and subject to equitable tolling." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015); *see also Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1196 (2016) ("The FTCA requires, as a prerequisite for federal court jurisdiction, that a

claimant first provide written notification of the
incident giving rise to the injury, accompanied by a
claim for money damages to the federal agency
responsible for the injury.").

The BOP Western Region rejected Plaintiff's
February 4, 2016 BP10 grievance appeal, in which he
requested transfer to RRC T.J. Mahoney for medical
reasons, on February 24, 2016 (several weeks after he
commenced this action).  *See* Exs. Doc. No. 23-1, PageID
#206, 209.  Plaintiff unequivocally states that he
"also sent a standard form 95 . . . to the [BOP]
[Director, Tort Branch] and have not received a
response," as of March 21, 2016.  *Id.*, PageID #189,

While FTCA exhaustion is not jurisdictional, and is
subject to equitable tolling in certain instances, when
a plaintiff states without reservation that he has not
completed the FTCA exhaustion requirements, clearly his
claims are premature.  In a similar and relevant
context, a prisoner's concession to non-exhaustion
under 42 U.S.C. § 1997e(a), is a valid ground for
dismissal, so long as no exception to exhaustion

39

applies.  *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003).  Accordingly, a prisoner's claim may be dismissed without prejudice if it is clear from the record that the prisoner has conceded that he did not exhaust administrative remedies.  *Id.*

Plaintiff concedes he has not received a final denial from the BOP of his FTCA claims, and he did not wait six months after filing the claim to allow a presumption of a denial sufficient to file suit.  Nor does it appear that Plaintiff demanded a sum certain in his grievances or appeal.  As such, Plaintiff's FTCA claims are premature and are DISMISSED without prejudice.

## V.  CONCLUSION

1.  The Complaint is DISMISSED IN PART for Plaintiff's failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  Specifically,

(a)  Plaintiff's *Bivens* claims as alleged against all Defendants in their official capacities are DISMISSED with prejudice.

40

(b)  Plaintiff's *Bivens* claims under the First, Fifth, and Eighth Amendments in Counts I, III, IV, V, VI, as alleged against all Defendants in their individual capacities fail to state a claim and are DISMISSED without prejudice.

(c)  Plaintiff's FTCA claims fail to state a claim and are DISMISSED without prejudice.

(d)  Plaintiff's ADA claim as alleged against Defendant L. Boyd in Count II, regarding the denial of a DVD/TV so that Plaintiff could participate in an exercise program comparable to that afforded other inmates, states a claim and shall be served.  Plaintiff's remaining claims in Count II under the ADA are DISMISSED without prejudice.

2.  The court will issue a separate service order, directing service on Defendant L. Boyd regarding Plaintiff's ADA claim in Count II only.

3.  After Plaintiff effects service on Defendant L. Boyd, he may move to amend all claims dismissed herein

without prejudice, if he is able to cure their
enumerated pleading deficiencies.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 19, 2016.



                    /s/ Leslie E. Kobayashi
                    Leslie E. Kobayashi
                    United States District Judge

*Seina v. United States*, 1:16-cv-00051-LEK-KJM; Order Dismissing First Amended
Complaint in Part; scrng 2016